## IN THE SEVENTH CIRCUIT COURT OF APPEALS
## CASE NO.: 14-3057

| | |
|---|---|
| EMILY HERX, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| DIOCESE OF FORT WAYNE- | ) |
| SOUTH BEND INC. AND ST. VINCENT | ) |
| DEPAUL SCHOOL, | ) |
| | ) |
| Defendants-Appellants. | ) |

_____

**Appeal from the United States District Court
for the Northern District of Indiana
Case No. 1:12-cv-00122
The Honorable Robert L. Miller Presiding**

_____

**DEFENDANTS-APPELLANTS' RESPONSE TO
PLAINTIFF-APPELLEE'S MOTION TO DISMISS APPEAL;
DEFENDANTS-APPELLANTS REQUEST THE COURT TO
DENY THE MOTION AND ACCEPT JURISDICTION OVER THIS APPEAL**

_____

Scott Hall, #12060-49
HALL & GOODEN LLP
810 South Calhoun Street, Suite 100
Fort Wayne, IN 46802
Telephone: (260) 422-2035
Fax: (260) 424-2541

Attorney for Defendants-Appellants

John C. Theisen, #549-02
THEISEN & ASSOCIATES, LLC
810 S. Calhoun Street, Suite 200
Fort Wayne, IN 46802
Telephone: (260) 422-4255
Fax: (260) 422-4245

Attorney for Defendants-Appellants

Defendants-Appellants, Diocese of Fort Wayne - South Bend, Inc. and St. Vincent De Paul School ("the School") (collectively "the Diocese"), hereby respond to the Plaintiff-Appellee's Motion to Dismiss Appeal filed by Plaintiff-Appellee Emily Herx ("Herx"). (Appellate Court Docket ("A. Dkt.") 11). The Diocese respectfully requests that Herx's Motion to Dismiss Appeal ("Herx Motion") be denied and that this Court accept jurisdiction over this appeal.

## I. The Evidence of Record Proves That The Diocese Neither Waived Nor Created The Issues Presented On Appeal

Herx's Motion is littered with claims that the Diocese has generated immunity defenses never before raised for purposes of its appeal to this Court. See Herx's Motion, pp. 1, 3, 7, 8, 10. The undisputed facts and record of this case, including the district court's Opinion and Order dated September 3, 2014 (A. Dkt. 1)[1], show that Herx's contention is irrelevant and inaccurate.

### A. The Salient, Undisputed Facts

For purposes of determining this Court's jurisdiction of the Diocese's appeal, the undisputed facts in this case are:

- The Diocese is a religious entity and the School, which is a part of the Diocese, is a private Catholic elementary school. (District Court Docket ("Dkt.") 122, Appendix ("App.") at ¶¶ 1-2, 4).

- The Diocese employed Herx as a teacher at the School. (Dkt. 122, App. at ¶¶ 28-37).

- As a teacher at the School, Herx signed a written teacher contract which contained

---

[1] A copy of the district court's Opinion and Order is attached as Exhibit A. Further references in this Response to that Opinion and Order will be "See Exhibit A at p. ___", with the page reference to the page number as provided by the district court.

a "Morals Clause", which provided:

> TERMS AND CONDITIONS: This contract may be terminated prior to its expiration, or not renewed, for reasons relating to improprieties regarding Church teachings or laws, . . . Acknowledging and accepting the religious and moral nature of the Church's teaching mission, the undersigned agrees to conduct herself or himself at all times, professionally and personally, in accordance with the episcopal teaching authority, law and governance of the Church in this Diocese. Charges of . . . conduct violative of the Teachings of the Church shall ultimately be resolved exclusively by the Bishop, or his designee, as provided in the Diocesan Education Policies.

(Dkt. 122, App. at ¶ 7).

- The Catholic Church teaches that in vitro fertilization ("IVF") is gravely immoral. (Dkt. 122, App. at ¶¶ 39-40, 54).

- Herx and her husband engaged in IVF treatments. (Dkt. 122, App. at ¶¶ 41, 45).

- When confronted regarding her use of IVF by her pastor, Monsignor John Kuzmich ("Msgr. Kuzmich"), Herx chose to continue the treatments. (Dkt., App. ¶ 44).

- Herx's teacher contract was not renewed due to "improprieties related to Church teachings or laws" as a result of her engaging in IVF despite what the Church taught. (Dkt. 122, App. at ¶¶ 46, 49-50).

- Herx admits that she has no reason to believe that the decision to not renew her contract was anything other than Msgr. Kuzmich's determination that she had violated Church teachings, including her showing no remorse for having done so. (Dkt. 122, App. at ¶ 52).

- The Church's teachings relating to IVF apply to men as well as women. (Dkt. 122,

2

App. ¶¶ 39-40, and App. Exhibit 1, Affidavit of Most Reverend Kevin C. Rhoades,

¶¶ 11-15).

Based on these undisputed facts, there is no question that the Diocese's decision, as a

religious employer, to not renew Herx's teacher contract as a result of her violation of Church

teachings, without remorse, was religiously based.  Further, there is no dispute that the Church's

teachings on IVF apply to both men and women since Herx claims that she "does not question or

challenge the Church's teachings."  (See Herx's Motion at p. 10).

### B.     The Diocese Preserved Its Defenses

Herx contends that the Diocese waived or created defenses to Herx's sex/pregnancy claims

for purposes of its appeal to this Court.  That contention is false.  The Diocese's Second Amended

Answer and Affirmative Defenses ("Diocese's Answer")(Dkt. 38) (pertinent pages attached as

Exhibit B), included affirmative defenses specific to:

- Herx's claims being barred by Title VII's religious employer exemptions;

- Herx's Complaint and any recovery thereon being barred by the Religion Clauses of the First Amendment of the Constitution of the United States which act to prevent scrutiny of religiously based decisions and assessments;

- Herx's claims being barred by her admitted conduct in violation of Church teachings or laws; and

- the unconstitutionality of Title VII as sought to be applied by Herx.

(Exhibit B, pp. 26-28).  Each of these affirmative defenses was at issue in the Diocese's Motion for

Judgment on the Pleadings (Dkt. 16, 17) and in its Motion for Summary Judgment (Dkt. 120, 121)

which resulted in the district court's Opinion and Order from which the Diocese takes appeal.  Of

particular note, those defenses refer to Herx's claims or Complaint being barred for the reasons

identified, not just to a lack of liability for the reasons identified.

As to the word "immunity", despite Herx's protests to the contrary, Herx acknowledges that the Diocese did liken the "categorical, not contingent" religious employer exemptions in Title VII to an immunity as described by this Court in *Korte v. Sebelius*, 735 F.3d 654, 678 (7th Cir. 2013), cert. denied by *Burwell v. Korte*, 2014 U. S. LEXIS 4703 (U. S. July 1, 2014) as part of the church-autonomy doctrine, and did at oral argument claim a "blanket immunity for a religiously based decision".  (See Herx's Motion at pp. 3, 8).[2]  Despite those references and Herx's arguments regarding "immunity", the standard for determination of this Court's jurisdiction over the Diocese's appeal is not tied solely to a claim of immunity.  Also, the Diocese's asserted affirmative defenses and the admitted references to "immunity" raised by the Diocese in the district court, without objection by Herx, distinguish this case from *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 735-36 (7th Cir. 2004) wherein repeated requests to raise affirmative defenses causing delays resulted in a denial of a request to amend affirmative defenses.

## II.  The Diocese's Appeal Meets The Criteria For A Collateral Order Appeal

The Diocese did not seek an appeal of the district court's Opinion and Order under 28 U. S. C. § 1292 (b), so there is no reason to respond to Herx's argument that this appeal is deficient under that statute.  The Diocese's appeal centers on the collateral order doctrine and is brought pursuant to 28 U. S. C. § 1291.  See *Cohen v. Beneficial Indus. Loan Corp.*, 337 U. S. 541, 546-47 (1949).  (challenge to district court's order on constitutionality of statute collateral to claims asserted in action and appealable).  *McCarthy v. Fuller*, 714 F. 3d 971, 975-76 (7th Cir. 2012)(collateral order

---

[2]  Herx complains that the Diocese did not use the word immunity in its Motion for Judgment on the Pleadings.  (See Herx's Motion at p. 3).  However, that Motion was ruled upon on March 11, 2013, prior to this Court's opinion in *Korte v. Sebelius* issued on November 8, 2013.

appeal proper due to district court taking sides on matters of religious doctrine which is akin to denial of an official immunity). The Diocese identified the standard for a collateral order based appeal in its Docketing Statement. The doctrine permits an immediate appeal under 28 U. S. C. §1291 of an interlocutory decision if: (1) the decision conclusively determines an important issue; (2) that issue is collateral to the merits of the action; (3) the issue would be effectively unreviewable if immediate appeal were not available and the appellant is threatened with irreparable harm if an appeal is not permitted. *Midland Asphalt Corp. V. United States*, 489 U. S. 794, 799 (1989); *Coopers & Lybrand v. Livesay*, 437 U. S. 463, 468 (1978); *Cohen*, 337 U. S. at 546; *United States v. Michelles Lounge*, 39 F.3d 684, 692-93 (7th Cir. 1994).

Herx claims that the issues raised in the Diocese's Notice of Appeal for collateral order review do not meet the collateral order test.[3] (See Herx's Motion at p. 6). The Diocese disagrees.

## A. The Religious Employer Exemptions Apply In This Case

Title VII provides two (2) exemptions for religious employers, one in general and the other specific to schools, such as the School which is owned and operated by the Diocese.

> This subchapter shall not apply to . . . a religious corporation, association, education institution or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, education institution, or society of its activities.

42 U. S. C. § 2000e-1)a).

> Notwithstanding any other provision of this subchapter, . . . **it shall not be an unlawful employment practice for a school . . . to hire and employ employees of a particular religion** if such school . . .

---

[3] The Diocese contends Herx misstates the issues in this case and improperly claims the Diocese has conceded a description of the issues. (Herx Motion p. 6). The Diocese contends it has properly set forth the issues in the Notice of Appeal (See attached Exhibit C) and in this Response and has conceded nothing.

5

> is, in whole or substantial part, owed, supported, controlled, or
> managed by a particular religious corporation . . . , or if the
> curriculum of such school . . . is directed toward the propagation of
> a particular religion.

42 U. S. C. § 2000e-2(e)(2).  (emphasis added).

The wording of the first exemption, 42 U. S. C. § 2000e-1(a), clearly exempts the religious employer from all of Title VII (the "subchapter"), when it applies "with respect to employment of individuals of a particular religion."  We know from the Supreme Court's decision in *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints v. Amos*, 483 U. S. 327, 107 S. Ct. 2862, 97 L. Ed. 2d 273 (1987) that the phrase "employment of individuals of a particular religion" includes religious organization decisions to terminate the employment of an employee who fails to adhere to religious tenets since that was the adverse job action at issue in that case.  *Amos*, 483 U. S. at 330 (employee discharged due to failure to qualify for a temple recommend due to failure to adhere to religious tenets).  As stated by the Supreme Court relative to the first exemption, "Section 702 of the Civil Rights of 1964, 78 stat. 255, as amended, 42 U. S. C. § 2000e-1, exempts religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion."  483 U. S. at 329.  Stated another way, religion is the basis for the religious employer's exemption.

The Diocese has contended from the onset of this case that because the religious employer's decision to not renew Herx's teaching contract was religiously based, Herx's claim under Title VII should be dismissed.  The exemptions allow religious employers to "take religion into account in making decisions".  *Korte*, 735 F.3d at 675.  As Herx notes, the Diocese made repeated efforts to secure dismissal of Herx's Title VII claims by way of these exemptions but each was denied by the

district court.  (See Exhibit A, pp. 18-23).  In the Diocese's view, those denials make the district court's determination on the issue "conclusive", as required for collateral order review.

The Diocese considers a collateral order appeal of this issue appropriate.  Likened to a "complete immunity" by this Court in *Korte*, if the exemption is not given its "categorical, not contingent" effect (*Korte*, 735 F.3d at 678), and the Diocese is required to go through a trial before the error is corrected, the Diocese has been irrevocably denied the benefit that the exemption was designed to provide.  *McCarthy*, 714 F.3d at 975.

Likewise, the second exemption which is tailored to schools owned by a religious corporation, such as the School in this case, provides relief for the employer from "any other provision of this subchapter" (all of Title VII) relative to hiring and employment of "employees of a particular religion".  42 U. S. C. § 2000e-2(e)(2).  Again, the exemption goes to the religious employer based upon the religious decision, not the type of discrimination claim filed.  Waiting until after a trial to appeal the determination whether the Diocese's religiously based decision was covered by this exemption would negate the value and purpose of the exemption.

## B.     Other Circuit Decisions Favor The Diocese's Appeal on the Exemption Issue

The Diocese's appeal of the district court's denial of Title VII's religious employer exemptions does not "ask this Court to break from all other circuits on this issue" as Herx claims. (See Herx's Motion at p. 7).  Rather, the Diocese offers the exemption issue to this Court as a matter of first impression in this Circuit based upon undisputed facts regarding the religious basis for the religious employer's non-renewal decision at issue.  The Diocese prays that this Court will rule that the exemptions apply in this case, consistent with the wording of the exemptions, rather than looking outside the wording of the exemptions to limit the scope of coverage that the exemptions were

designed to provide.  All other Circuits do not agree with Herx.

### 1. The Third Circuit

Concerning the religious employer exemption in 42 U. S. C. § 2000e-1(a), which provides "This subchapter shall not apply to . . . a religious employer . . .", the Third Circuit reasoned, "[o]nce Congress stated that '[t]his title [Title VII] shall not apply' to religiously motivated employment decisions by religious organizations, no act by Little [the employee plaintiff] or the Parish [the religious employer] could expand the statute's [Title VII's] scope". *Little v. Wuerl*, 929 F.3d 944, 951 (3rd Cir. 1991).  The religious employer exemptions must be read broadly due to constitutional concerns so that the religious employer's "permission to employ persons 'of a particular religion' includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts". *Id*

The Diocese has argued throughout this case that once it is determined that the religious employer's employment decision at issue is religiously based, Title VII shall not apply.  That religiously based determination is undisputed in this case, so Title VII should not apply regardless of whether the claim filed under Title VII is for sex, pregnancy or religious discrimination.  To find otherwise would improperly broaden the statute's scope by limiting the scope of the exemption based upon the type of claim filed, leaving the religious basis for the decision subject to judicial scrutiny, such as has occurred in this case.

Despite the reasoning and outcome in *Wuerl*, *supra*, Herx cites to *Petruska v. Gannon Univ.*, 462 F.3d 294, 303 (3rd Cir. 2006) for the proposition that the Third Circuit supports the district court's decision in this case that Title VII's religious employer exemptions apply only to claims of religious discrimination.  (See Herx's Motion at p. 7).  That is incorrect.

8

The decision to dismiss the plaintiff's gender discrimination charge in *Petruska* was based on the ministerial exemption to Title VII, not the application of the religious employer exemptions. 462 F.3d at 307. Concerning the religious employer exemptions, that court stated "[t]he statute [Title VII] exempts religious entities and educational organizations from its non-discrimination mandate to the extent that an employment decision is based on an individual's religious preferences". 462 F.3d at 303 (citation omitted). The *Petruska* decision is not inconsistent with the *Wuerl* decision, and each favors the Diocese's position on the proper meaning and scope of Title VII's religious employer exemptions.

### 2.    The Fourth Circuit

Herx cites to *Rayburn v. General Conf. Of Seventh-Day Adventists*, 772 F.2d 1164,1166 (4th Cir. 1985) as support for the district court's decision on the religious employer exemptions. That citation is equally flawed since that case, like *Petruska*, concerned the ministerial exception to Title VII – "we hold that the Constitution requires that civil authorities decline to review either the procedures for selection [of a person who performs ministerial work for the religious body] or the qualifications of those chosen or rejected here". 772 F.2d at 1172. However, in the course of that decision, the court made reference to the religious employer exemption found at 42 U. S. C. § 2000e-1(a) stating, "[t]he statutory exemption applies to one particular reason for employment decision – that based upon religious preference. It was open to Congress to exempt from Title VII the religious employer, not simply one basis of employment, and Congress plainly did not." 772 F.2d at 1166-67.

The Diocese's position on appeal to this Court is consistent with the above stated position of the Fourth Circuit in *Rayburn*. The religious employer exemptions built into Title VII apply to only religiously based decisions. The Diocese has never argued in this case that it should be

9

considered exempt from Title VII **solely** because it is a religious employer.  The exemption flows

to the religious employer from the religious nature of the decision made by the religious employer.

Herx's citation to *Kennedy v. St. Joseph's Ministeries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011)

is similarly flawed.  In that case, the appellate court went to great lengths to explain that the breadth

of Title VII's religious employer exemptions include not only hiring and firing decisions, but also

harassment and retaliation claims.  657 F.3d at 193-94.  Further, the decision in Kennedy did not

limit the exemptions to only claims of religious discrimination, albeit that was the type of charge

filed by the plaintiff in that case.  In the course of its decision, that court referenced a pertinent

decision from the Sixth Circuit about the religious employer exemptions, as follows:

> The revised [exemption] provision, adopted in 1972, broadens the
> exemption to include any activities of religious organizations,
> regardless of whether those activities are religious or secular in
> nature.  Thus, "[t] he decision to employ individuals 'of a particular
> religion' under § 2000e-1(a) and § 2000e-2 (e)(2) has been
> interpreted to include the decision to terminate an employee whose
> conduct or religious beliefs are inconsistent with those of the
> employer".  657 F.3d at 192, quoting *Hall v. Baptist Mem'l Health
> Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000).

### 3.    The Sixth Circuit

Herx's citation to *Boyd v. Harding Academy of Memphis, Inc.*, 88 F3d 410, 413 (6th Cir.

1996) regarding Title VII's religious employer exemptions is somewhat accurate.  However, that

decision provides no real analysis for the appellate court's conclusion on the exemption and

uniquely limits the exemption to a religious employer's choice to employ only members of its

religion without fear of a religious discrimination charge.  88 F.3d at 413.  But, that Circuit's later

decision in *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, quoted in *Kennedy*, *supra*,

makes Herx's reliance on *Boyd* suspect.

10

### 4.     The Ninth Circuit

Finally, Herx's citation to *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1279 (9th Cir. 1982) provides no real support for Herx's position.  In that case the gender discrimination charge at issue was stimulated by a religious employer's gender based pay and benefit plan which favored men.  676 F.2d at 1274.  The court determined that the charging party did not qualify as a "minister" (676 F.2d at 1278), and rejected the employer's claim "that section 702 broadly exempts religious organization from charges of discrimination based on non-religious grounds", since "Congress consistently rejected proposals to allow religious employers to discriminate on grounds other than religion".  676 F.2d at 1277.  Ultimately, the court determined that since the gender based pay and benefit structure at issue was actually contrary to the employer's stated religion beliefs, enforcement of Title VII's equal pay provision could not run afoul of religious doctrine.  676 F.2d at 1279.

## THIS CIRCUIT SHOULD APPLY THE EXEMPTIONS IN THIS CASE

The Diocese does not seek a blanket exception from Title VII in this case simply because it is a religious employer.  The Diocese contends that the Church teachings at issue in this case are gender neutral and Herx claims to not be contesting Church teachings.  Imposing a trial on the non-discrimination requirements of Title VII on the Diocese in this case would clearly put Church doctrine on trial since Church teachings constitute the basis for the decision.

This Court likened Title VII's religious employer exemptions to a legislative application of the church-autonomy doctrine, which operates as a complete immunity where it applies.  *Korte*, 735 F.3d at 678.  The Diocese respectfully submits that those exemptions, and that immunity, should apply in this case.  If this Court agrees, then the Diocese should be considered exempt from Herx's Title VII claims and not be burdened by having to undergo a trial on those claims.

11

**C.     The Diocese's Constitutional Defenses are Valid and Appropriate for Appeal**

Herx cites to *Segni v. Commercial Office of Spain*, 816 F.2d 344, 345 (7th Cir. 1987) for the proposition that a denial of First Amendment defenses raised as the basis for a motion to dismiss is not properly subject to appeal under the collateral order doctrine.  The Diocese argues that the Court's decision in *Segni* actually supports the Diocese's position.

First, in that case, the Court noted the appropriateness of a collateral order doctrine based appeal "[w]here the right asserted by way of defense to a lawsuit is (or includes) a right not to bear the burden of the suit, regardless of outcome," . . . has been denied.  *Id*.  The Diocese claims that it should be spared the burden of the suit based upon the religious employer exemptions built into Title VII, so the collateral order doctrine should apply in this case.

Second, apart from the statutory exemptions issue, the Diocese does not appeal to this Court simply because its First Amendment based affirmative defenses were denied at summary judgment, such as the petition clause defense was denied in *Segni*.   The Diocese does not present to this Court vague, or unfocused First Amendment based defenses which it claims were denied improperly.

The district court's Opinion and Order dated September 3, 2014 provides the framework for how the court proposes to allow a jury to assess the sincerity of the Diocese's belief in Church teachings, determine the gender neutrality of Church teachings, and decide the prospective gender based application of those teachings.  That framework makes the Diocese's collateral order appeal of the denial of its First Amendment defenses different than the one described in the *Creek*[4] section of the *Segni* decision.  From the Diocese's perspective, the district court's ruling in this case focuses the First Amendment violation issues so that it is easy to see that the enemy, so to speak, is at the

---

[4]  This Court in *Segni* divided its decision into two Sections, one entitled "*Creek*" and the other "*Segni*".

gate, and this Court's immediate intervention is necessary to protect the Diocese's constitutional rights from being violated. The district court's denial of Title VII's religious employer exemptions to the Diocese has exposed examples of the constitutional problems that those exemptions were designed and intended to prevent.

1.    **Title VII is unconstitutional as sought to be applied by Herx in this case.**

Herx seeks to deny the Diocese's rights under the First Amendment by subjecting the Diocese's undisputedly religious based decision to not renew her teacher contract due to her admitted violation of Church teachings to scrutiny by a jury to assess whether the undisputed reason was the real reason or a pretext for violation of Title VII. The Diocese considers that effort improper.

"It's well understood that the **<u>Free Exercise Clause</u>** protects 'first and foremost, the right to believe and profess,' but also the right to engage in religiously motivated conduct." *Korte*, 735 F.3d at 676, citing *Employment Div. Dept. Of Human Resources of Ore. v. Smith*, 494 U. S. 872, 877 (1991). The concept of religious liberty extends beyond the rights of individuals and also "protects, broadly speaking, the autonomy of the church." *Korte*, 735 F. 3d at 677. The Religion Clauses of the Constitution give churches, not civil authorities, the right of control over religious governance, and give ecclesiastical authorities, not judges, authority to decide questions within their religious domain. *Id*. At 678. "The federal courts are not in the business of enforcing orthodoxy or requiring consistency and uniformity in religious beliefs or practices." *Hall v. Baptist Memorial*, 215 F.3d at 626 (citation omitted).

In *NLRB v. Catholic Bishop of Chicago*, 440 U. S. 490, 507, 99 S. Ct. 1313, 59 L. Ed. 2d 533 (1979), the Supreme Court affirmed this Court's denial of jurisdiction for the National Labor Relations Board ("Board") under the National Labor Relation Act ("NLRA") over Catholic schools,

13

including some owned and operated by the Diocese.  That decision referenced this Court's concern

with the Board's involvement in unfair labor practice proceedings in which the schools had indicated

religious creeds mandated the challenged action.  440 U. S. at 502.

> The resolution of such charges by the Board, in many instances, will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission.  It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.

*Id*.  The Supreme Court acknowledged that the parochial school's very purpose centers on

propagation of faith, that the "church-teacher relationship in a church-operated school differs from

the employment relationship in a public school," and that it could "see no escape from conflicts

flowing from the Board's exercise of jurisdiction over teachers in church-operated schools and the

consequent serious First Amendment questions that would follow."  440 U. S. at 503-04.

The reasoning that caused the Supreme Court to deny the Board jurisdiction over Diocesan

schools under the NLRA (in order to avoid seemingly endless and serious First Amendment

conflicts) supports the Diocese's contention that application of Title VII to the religiously based

decision at issue is constitutionally infirm.  Scrutiny of a clergy-administrator's religiously based

decision impinges on rights guaranteed by the Religion Clauses occurs regardless of whether it

comes by way of Board intervention or Title VII enforcement.

In *Amos* the Supreme Court ruled that the religious employer exemption to Title VII found

at 42 U. S. C. § 2000e-1 is lawful under an Establishment Clause analysis.  *Amos*, 483 U. S. at 339-

40.  It held that "§ 702 is rationally  related to the legitimate purpose of alleviating significant

governmental interference with the ability of religious organizations to define and carry out their

14

religious missions," and noted that it "effectuates a more complete separation of the two [church and state] and avoids the kind of intrusive inquiry into religious belief that the District Court engaged in this case." *Id.* (Footnote omitted). "It is well established, too, that 'the limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by the Free Exercise Clause.'" *Amos*, 483 U. S. at 334, quoting *Walz v. Tax Comm'n*, 397 U. S. 664, 673 (1970). The exemptions can give greater protection than the Constitution requires.

The Supreme Court's decisions in *Amos* and *Catholic Bishop* offer clear guidance on the constitutionality of Title VII under the Free Exercise Clause if its religious employer exemptions are not applied under the facts of this case. The test for determination of whether a valid and neutral law of general applicability violates the Free Exercise Clause involves review of: (1) the magnitude of the law's impact on the exercise of a religious belief; (2) the existence of a compelling interest justifying the burden on the exercise of the belief; and (3) the extent that recognition of an exemption from the statute impedes the statute's objectives. *Sherbert v. Verner*, 374 U. S. 398, 403 (1963).

There is no question that merely "inquiring into the good faith of the position asserted by the [religious school's] clergy-administrator and its relationship to the school's religious mission" constitutes the prospect of serious First Amendment questions. *Chicago Bishop*, 440 U. S. at 502-04. The Diocese argues that the district court's decision (See Exhibit A, p. 18-19) to put Msgr. Kuzmich's undisputedly religiously based non-renewal decision on trial to test its "sincerity", "good faith" or "honesty" is a clear and serious invasion of the Diocese's right to free exercise of religion.

 The Diocese does not contest the state's interest in prohibiting secular based employment discrimination as provided in Title VII. To protect that interest from running afoul of the First Amendment, religious employer exemptions were built into Title VII to provide legislatively enacted

relief valves that act to protect one area of decision making, religiously based, by a select group of employers, religious, from the non-discrimination provisions of Title VII. "[I]t is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organization to define and carry out their religious missions." *Amos*, 483 U. S. at 335.

The Diocese sees a symmetry between the lawful goal of prohibiting employment discrimination under Title VII and the constitutional need to exempt a religious employer from coverage under that law to the extent that its decision is religiously based. If that sense of coexistence is destroyed, as Herx seeks to accomplish by putting the Diocese's religiously based decision on trial, the law, Title VII, becomes unconstitutional as applied.

## 2.   A Jury's Assessment of the Gender Neutrality of Church Teachings on IVF Would Be Improper

The district court's Opinion and Order acknowledges but does not accept the Diocese's contention that Church teachings on the morality of IVF apply to men and women. (See Exhibit A, p. 18). Herx claims she is not contesting Church teachings yet she seeks to prove her sex discrimination case by a Church teaching which the Bishop has stated applies to men and women. Conceptually, no rule could be more gender neutral than one which proscribes engaging in a procedure which requires both a female and a male participant. There is no "child bearing" or "fertilization" capacity component at issue. Herx presented no evidence of gender specific application of the Church teachings. The district court acknowledged that Herx's claim did not present the gender based attendance termination issue determinative in *Hall v. Nalco*, 534 F.3d 644, 649 (7th Cir. 2008), but still decided that "[t]he triable issue is whether Mrs. Herx was not renewed because of her sex, or because of a sincere belief about the morality of in vitro fertilization." (See

Exhibit A, p. 18-19).

The district court determined that Church teachings are not gender neutral, and that a jury should decide whether the Diocese would apply its apparently "gender based" teachings equally if a male employee was discovered to be engaged in IVF. (Exhibit A, p. 18-19). The district court created a gender issue by choosing to disbelieve or disregard the Diocese's uncontested position that Church teachings on IVF are gender neutral and then saddled the Diocese with the burden of convincing a jury that "gender specific" Church teachings would be applied equally to a hypothetical male employee who engaged in IVF. There is not one shred of evidence in the record to support a finding of gender discrimination, and no evidence that the Church teaching against IVF is gender specific, and yet the Diocese is required to go to trial to defend whether sex discrimination occurred.

The Diocese contends this decision by the district court runs afoul of the Diocese's rights under the First Amendment. "The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task". *Thomas v. Review Board of the Indiana Employment Security Division, et al*, 450 U. S. 707, 714, 101 S. Ct. 1425, 67 C. Ed 2d 624 (1981). "[T]he resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Id*.

### 3.    A Jury's Assessment of the "Sincerity" of Belief and the Prospective Application of Church Teaching Would Be Improper

Herx claims that "'Catholic Church teachings on the morality of in vitro fertilization' are not relevant to the resolution of this case". See Herx Motion at p. 10. The falsity of that statement is made obvious by the district court's ruling which effectively shifts the burden of proof to the Diocese

17

to convince the jury of the sincerity and gender neutrality of its beliefs as the basis for its decision even though Herx presented no evidence to put the gender neutral meaning or application of Church teachings in question.  (See Exhibit A, p. 18-19).  The issues that the Diocese present to this Court include the constitutional infirmity of requiring the Diocese to argue and convince a jury of the "sincerity" of its religious beliefs on IVF and entrusting a jury to determine the prospective application of those beliefs to a male employee who may be discovered to be engaging in IVF.

Herx claims to not be contesting the Church's teachings on IVF in this case.  Nothing has been offered to dispute those teachings.  The Diocese considers being required to convince a jury of the gender neutral scope of Church teachings on IVF , and the "sincerity" of its beliefs on IVF as the basis for the nonrenewal of Herx's teacher contract, especially without evidence of contrary application of those teachings, a direct attack on those teachings.  If a jury perceives the requisite "sincerity" to be missing, then it determines that the teaching is not worthy of belief.  Likewise, requiring the Diocese to argue to a jury that its teachings on IVF are gender neutral, applicable to men and women, without any evidence to the contrary presented by Herx, simply empowers the jury to determine whether that is truly the case.  It improperly invites the jury to determine what the belief "really" is and whether the stated belief is "acceptable, logical, consistent or comprehensible."  *Id*. The Diocese respectfully submits that its protected rights under the First Amendment would be violated if those portions of the district court's Opinion and Order are not reversed prior to trial.

### D.    The Case Law Cited by the District Court Does Not Support Its Decision

The case law citations referenced by the district court in support of its determination that jury assessment of whether Herx's admitted violation of Church teachings was the true reason for the non-renewal of Herx's teacher contract do not support the district court's decision.  (See Exhibit A,

p. 26-27).  *Geary v. Visitation of Blessed Virgin Mary Parish Sch.*, 7 F.3d 324, (3rd Cir. 1993)

concerned the Age Discrimination in Employment Act ("ADEA") rather than Title VII, so Title VII's

religious employer exemptions were clearly not at issue or available.  7 F.3d at 325.  Moreover, the

plaintiff in *Geary*, similar to Herx, "did not contest that she in fact violated the very doctrine that

Visitation School claimed as the reason for her dismissal, and she did not present any evidence that

would suggest a non-religious basis for her dismissal", so the district court's entry of summary

judgment on her ADEA discrimination claim was affirmed.  7 F.3d at 332.  Here, Herx provided no

evidence to suggest a non-religious basis for the non-renewal of her contract as the result of her

admitted violation of Church teachings, but her Title VII claim was not dismissed.

As the district court states, *Redhood v. Conference of Seventh-Day Adventists*, 566 F. Supp.

2d 125, 135 (E. D. N. Y 2008) provides, "[A]lthough the validity of defendant's religious code may

not be impugned, the allegedly discriminatory application of such a code to lay employees [under

Title VII] is a proper subject of judicial scrutiny".  However, that case discusses only the ministerial

exception to Title VII, (see 566 F. Supp. 2d at 128-133), does not discuss Title VII's religious

employer exemptions raised by the Diocese, and specifically admonishes that "neither the court, nor

the jury, may question the sincerity of a defendant's belief in a proffered religious justification".  566

F. Supp. 2d, at 134, quoting *Rweyemamu v. Cote*, 520 F. 3d at 198, 207 (2nd Cir. 2008).  Here, the

district court's ruling puts that "sincerity" at issue as a means of the Diocese's burden of proof.

*Smith v. Raleigh Dist. of North Carolina Conf. Of United Methodist Church*, 63 F. Supp. 2d

694, 718 (E. D. N. C. 1994) is cited by the district court for the proposition that "[c]ourts that have

permitted Title VII claims against religious institutions have done so because such claims could be

determined without excessive entanglement with religious or ecclesiastical aspects of a given

institution". The Title VII claims in *Smith* were based on sexual harassment alleged to have been perpetrated by a member of the clergy. 63 F. Supp. 2d at 698-99. The court found that allowing a jury to decide whether the religious employer had taken reasonable action calculated to end the harassment after it was reported would not engage the jury in assessing the spiritual propriety of the discipline issued to the offender. 63 F. Supp. 2d at 718. The issue in *Smith* is not the issue in Herx's case. Here the district court's ruling contemplates expressly empowering the jury to assess the spiritual propriety or importance of Church teachings as the basis for the non-renewal decision at issue.

## CONCLUSION

Herx's Motion to Dismiss this appeal should be denied and this Court should accept jurisdiction of this appeal.

Respectfully submitted,

HALL & GOODEN LLP

 s/ Scott Hall
Scott Hall, #12060-49
810 South Calhoun Street, Suite 100
Fort Wayne, IN 46802
Telephone: (260) 422-2035
Fax: (260) 424-2541
Attorney for Defendants-Appellants

THEISEN & ASSOCIATES, LLC

 s/ John C. Theisen
John C. Theisen, #549-02
810 South Calhoun Street, Suite 200
Fort Wayne, IN 46802
Telephone: (260) 422-4255
Facsimile: (260) 422-4245
Attorney for Defendants-Appellants

20

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using its CM/ECF system this 14th day of October, 2014, which will send notification of such filing to the following CM/ECF recipients:

Kathleen A. DeLaney, Esq.
DeLaney & DeLaney LLC
3646 Washington Blvd
Indianapolis, IN 46205

s/ M. Scott Hall
M. Scott Hall
