No. 14-3057
_____

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT
_____

EMILY HERX,
*Plaintiff-Appellee*,

    v.

DIOCESE OF FORT WAYNE-SOUTH BEND, INC. AND ST. VINCENT DE PAUL SCHOOL,
*Defendants-Appellants*.

_____

**Appeal from the United States District Court
for the Northern District of Indiana
Case No. 1:12-cv-00122
The Honorable Robert L. Miller Presiding**

_____

**PLAINTIFF-APPELLEE'S REPLY IN SUPPORT OF MOTION TO DISMISS APPEAL**

_____

DeLaney & DeLaney LLC
Kathleen A. DeLaney
3646 North Washington Blvd.
Indianapolis, IN 46205
Tel. 317-920-0400
Fax 317-920-0404
Kathleen@delaneylaw.net

Attorney for Plaintiff-Appellee, Emily Herx

Appellee Emily Herx ("Herx"), by counsel and pursuant to Rule 27(a)(4) of the Federal Rules of Appellate Procedure, respectfully submits her Reply in Support of Motion to Dismiss Appeal Dkt. 11.

## I.    Introduction.

This Court lacks jurisdiction over this appeal under the collateral order doctrine (and all other grounds Appellants asserted for immediate appealability in their Docketing Statement (Dkt. 4)). Dkt. 11. In opposing Herx's Motion to Dismiss, Appellants focus on the substantive merits of an appeal of the order denying summary judgment in part, as opposed to addressing whether this Court has jurisdiction of the appeal at this interlocutory stage. Dkt. 13-1. Appellants go to great lengths to distinguish the multiple cases cited by the District Court in denying the motion for summary judgment on the Title VII claims.  Dkt. 13-1, pp.7-11, 18-20. Nothing would prevent Appellants from filing an appeal of that ruling, asserting the same arguments after trial. This alone defeats application of the collateral order doctrine here.

Appellants continue to argue that Herx's Title VII claim should be dismissed because the challenged employment decision was allegedly "religiously based." If this position is taken to its logical conclusion, any religious employer could defeat any employment discrimination claim, simply by asserting that the challenged employment decision was "religiously based."

Finally, Appellants take exception with the District Court's description of the issues to be resolved at trial by a jury. Again, this bears on the merits of the case and lends no support to this element of the collateral order doctrine test. The appropriate avenues for Appellants to raise these arguments are at the jury instructions conference and post-judgment appeal phases.

**II.     The Appeal Lacks Jurisdiction, Rendering Merits Arguments Irrelevant.**

Appellants spend considerable space attacking the District Court's ruling that the Title VII statutory exemptions apply only to religious discrimination claims, but devote only a few paragraphs to why or how this issue falls within the collateral order doctrine. Dkt. 13-1, pp. 5-11. This Court cannot decide the merits of Appellants' appeal before deciding the jurisdictional issue. *See, e.g.*, *Blue v. IBEW Local Union 159*, 676 F.3d 579, 582 (7th Cir. 2012) ("Before turning to the merits of [the] appeal, we must clarify the scope of our jurisdiction"). Appellants' attempts to distinguish several cases from other Circuits (all of which were cited by the District Court in its Order on Summary Judgment) would be relevant only if this appeal proceeds to merits briefing, which has been stayed pending resolution of the Motion to Dismiss for Lack of Jurisdiction.  Dkt. 12.

**A.     Appellants' Interpretation of the Title VII Statutory Exemptions Would Result in "Blanket Immunity" from Suit for Religious Employers.**

Even if Appellants' arguments on the Title VII exemptions were relevant, they would not justify acceptance of the appeal or warrant reversal of the District Court's ruling. Appellants argue that they do "not seek a blanket exception from Title VII." Instead, they assert that the exemptions should apply to employment decisions made for religious reasons. The impact of this interpretation, would, in fact, result in a blanket exemption for religious employers.  Appellants argue that their assertion that the challenged employment decision was "religiously based" should preclude any court's further consideration of the case. This has never been recognized as the law by any Circuit. In fact, "church organizations have been held liable under Title VII for benefit and employment decisions which they contended were based on religious grounds[,] but which also discriminated against women based upon sex." *Vigars v. Valley Christian Ctr.*, 805 F. Supp. 802, 807 (N.D. Cal. 1992) (denying religious school's motion for summary judgment

where it terminated librarian for being pregnant and unmarried). Appellants have cited cases where Courts dismissed religious discrimination claims based on the Title VII statutory exemptions. *See Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991) (affirming dismissal of Plaintiff's religious discrimination claim); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000) (same). Herx has not made a religious discrimination claim. Appellants cite not a single case holding that the Title VII statutory exemptions apply to claims for gender, race, or national origin discrimination.

Appellants' proposed interpretation of the statutory exemptions would effectively exempt religious employers from any Title VII employment discrimination claim, once the employer asserts that the challenged employment decision was "religiously based." This equates to blanket immunity for religious employers – as long as they claim a religious basis for their employment decisions. Such a rule would create perverse incentives for religious employers to label all of their employment decisions "religiously based," thereby shielding them from Title VII liability completely. This is contrary to the Supreme Court's decision in *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, which recognized the ministerial exception in order to balance the interests of enforcing employment discrimination statutes against the interest of religious groups to choose "who will preach their beliefs, teach their faith, and carry out their mission." 132 S. Ct. 694, 710 (2012). This was not what the statutory exemptions were designed to do, as the legislative history makes clear. *See EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1276-77 (9th Cir. 1982) (describing legislative history of the statutory exemptions and concluding that Congress did not intend to exempt religious employers from claims of race, gender, or national origin discrimination). Appellants' argument, taken to its logical conclusion, would allow religious organizations to escape liability for invidious race or gender

3

discrimination simply by asserting that the discrimination is part of their religious beliefs. For example, a religious organization could refuse to hire an African-American because of his race, and avoid liability by claiming that the decision had been made for religious reasons because racial discrimination is part of the organization's religious tenets. If the Title VII statutory exemptions apply to Appellants' decision not to renew Herx's contract, they would similarly apply to this hypothetical scenario.

### B.     The Statutory Exemptions Confer No Immunity from Trial and Lend No Support to Application of the Collateral Order Doctrine Here.

Appellants' position on appeal goes one step further than claiming immunity for all purportedly religiously based decisions. Appellants argue that not only should religious organizations be immune from liability under these circumstances, but they should also be immune from trial. Again, Appellants cite no authority (other than *Korte v. Sebelius*) in support of this radical claim. 735 F.3d 654, 678 (7th Cir. 2013).

The collateral order doctrine has three elements, all of which must be met in order for this Court to have jurisdiction at this stage of this case: (1) the decision "conclusively determines the disputed question; (2) resolves an issue…separate from the merits of the underlying action; and (3) is effectively unreviewable on appeal from a final judgment." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 105 (2009). Appellants' sole argument that the collateral order doctrine applies to its defense under the Title VII statutory exemptions is that these exemptions provide them with "complete immunity," including immunity from trial. Dkt. 13-1, p. 11. Appellants cite to *Korte* in support of this assertion. 735 F.3d at 678. *Korte* did not involve a suit under Title VII, but a RFRA challenge to the contraception mandate of the Affordable Care Act. *Id*. at 659. The Court said, in dicta, that "Title VII…prohibits employment discrimination on the basis of religion….Certain religious employers are exempt from *this part* of Title VII and may take

4

religion into account in making employment decisions." *Id*. at 675 (internal citations omitted) (emphasis added). It described the statutory exemptions as "legislative applications of the church-autonomy doctrine," and further noted that this principle "operates as a complete immunity, or very nearly so." *Id*. at 678.

The description of a defense as an immunity "does not resolve the issue whether the denial of the immunity is a collateral order." *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346 (7th Cir. 1987). In an unsupported leap of logic, Appellants assert that this Court intended to "resolve issues of appealability" when it described the church autonomy doctrine (and, by, further extension, the Title VII statutory exemptions) as a "complete immunity," an issue that was not before the Court in that case. *Segni*, 816 F.2d at 346; *Korte*, 735 F.3d at 678. In order to meet the third element of the collateral order doctrine, the Title VII statutory exemptions defense would need to be "effectively unreviewable on appeal from a final judgment." *Mohawk Indus.*, 558 U.S. at 105. Appellants cannot meet this element. If Appellants go to trial and lose, they would nonetheless retain the opportunity to appeal and assert that the statutory exemptions bar liability in this case. Although they claim that imposing a trial on them "would clearly put Church doctrine on trial," the District Court made it clear in its Order that that "shouldn't happen." Dkt. 13-2, p. 27. Appellants have no reason to doubt the veracity of the District Court's avowal. The District Court is in the best position to address Appellants' concerns, and to ensure that the jury receives proper instructions about what it should and should not decide. Herx is not challenging Church doctrine – she is challenging the nonrenewal of her teaching contract.

The collateral order doctrine does not apply to the District Court's analysis of the Title VII statutory exemptions. This Court does not have jurisdiction over the appeal of this issue.

## C. Appellants' First Amendment Arguments Are Not Relevant at this Stage.

As with the Title VII statutory exemptions argument, Appellants devote much of their First Amendment arguments to the merits, rather than the jurisdictional challenge. Dkt. 13-1, pp. 13-16. Once again, these arguments are irrelevant to the jurisdictional issue, which is the subject of this motion, and must be decided as a threshold matter. Appellants make little attempt to shoehorn the First Amendment defense into the collateral order doctrine. If anything, Appellants' response demonstrates how closely intertwined these questions are with Herx's claims. This forecloses the possibility that this question could be "conceptually distinct" from the merits of the underlying claims, which is required under the collateral order doctrine. *McCarthy v. Fuller*, 714 F.3d 971, 975 (7th Cir. 2013).

### 1. The Collateral Order Doctrine Does Not apply to First Amendment Defenses and Non-Collateral Issues.

Appellants attempt to distinguish this Court's decision in *Segni* by stating that "immediate intervention is necessary to protect [their] constitutional rights from being violated." Dkt. 13-1, p. 13. Appellants cite no cases, from this Court or elsewhere, which permitted an immediate appeal of the denial of a First Amendment defense under the collateral order doctrine. *Segni* controls and supports dismissal of the appeal. 816 F.2d at 345-346.

Even if *Segni* did not control, the issues which Appellants seek to appeal are not collateral. Appellants repeatedly state that IVF violates their religious teachings. Appellants now go further by arguing that Herx cannot question their claim of gender neutrality in executing an employment decision that is based on this belief. The gender neutrality (or lack thereof) of any adverse employment action rests at the heart of every gender discrimination claim. This issue is not "collateral" to the merits of the action – it *is* the merits of the action. Thus, the collateral order doctrine does not apply and lends no jurisdictional support to this appeal.

6

### 2. The Jury May Decide the Question of Gender Neutrality without Running Afoul of the First Amendment.

Appellants assert that the jury's consideration of the purported gender neutrality of its decision not to renew Herx's contract would be "improper." Appellants apparently claim that they cannot be held liable for gender or pregnancy discrimination (or even stand trial for such claims). Boiled down to its essence, Appellants argue that because they sincerely believe that they do not discriminate, no jury may be permitted to second guess them.

Appellants overstate a parade of horribles in the "enemy at the gate." There is a significant difference between asking a jury to decide whether a particular religious belief is sincere (which Herx does not intend to do), and asking a jury to decide that whether an assertion of gender neutrality is legitimate. Despite Appellants' protestations to the contrary, the latter is a legal and factual argument, not a matter of religious doctrine or belief. A jury must decide whether Appellants discriminated against Herx in terminating her employment for undergoing IVF. The jury can and will do so without considering the irrelevant question of whether Appellants sincerely believe that IVF is a grave, immoral sin.

Appellants offer no justification for pre-trial appeal under the collateral order doctrine. If the jury renders a verdict against them, they would retain an opportunity for a merits appeal. Even if the remaining elements of the collateral order doctrine were applicable (which they are not), Appellants have not shown that these issues would be unreviewable on appeal from a final judgment. *Mohawk Indus.*, 558 U.S. at 105. This reason alone warrants dismissal of the appeal.

### III. Conclusion.

The collateral order doctrine does not confer jurisdiction over this appeal. Appellants have disclaimed any jurisdictional claim under 28 USC §1292(b). Dkt. 13-1, p. 4. Appellee Emily Herx respectfully requests that the Court grant her Motion to Dismiss, dismiss the appeal,

7

and remand the case to the Northern District of Indiana to allow the jury trial to commence on December 16, 2014, as scheduled.

                                              Respectfully submitted,

                                              */s/ Kathleen A. DeLaney*_____
                                              Kathleen A. DeLaney
                                              Attorney for Plaintiff/Appellee
                                              Emily Herx

DELANEY & DELANEY LLC
3646 North Washington Boulevard
Indianapolis, IN 46205
Ph 317.920.0400
Fx 317.920.0404

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 17, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                            */s/ Kathleen A. DeLaney*_____
                                            Kathleen A. DeLaney
                                            Attorney for Plaintiff/Appellee
                                            Emily Herx